IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JOSHUA DINNERMAN,            )   CIVIL NO. 07-00164 SOM-BMK
                            )
            Plaintiff,       )
                            )   ORDER DENYING DEFENDANT'S
        vs.                 )   MOTION TO DISMISS BASED ON
                            )   PERSONAL JURISDICTION
DOUTER COFFEE COMPANY, LTD,  )   PRINCIPLES
et al.,                     )
                            )
            Defendants.      )
_____ )

ORDER DENYING DEFENDANT'S MOTION TO DISMISS
BASED ON PERSONAL JURISDICTION PRINCIPLES

I.      INTRODUCTION.

        This action, removed on diversity grounds, arises out

of an alleged contract for a Japanese company to open coffee

shops in Hawaii.  Plaintiff Joshua Dinnerman says Douter Coffee

Company, Ltd., breached an agreement to share profits with him in

exchange for Dinnerman's help in breaking into the coffee shop

business.  See Complaint (Nov. 3, 2006) ¶ 5.

        Dinnerman's Complaint alleges the following: fraud,

fraudulent concealment, and deceit (Count I); misrepresentation

(Count II); breach of contract (Count III); tortious breach of

contract (Count IV);[1] detrimental reliance (Count V); breach of

---

[1]In Francis v. Lee Enterprises, Inc., 89 Haw. 234, 971 P.2d
707 (1999), the Hawaii Supreme Court held that tortious breach of
contract is not a valid cause of action in the employment
context.  That reasoning may apply in the commercial context and
bar Dinnerman's tortious breach of contract claim.  However, the
validity of a tortious breach of contract claim is not at issue
on this motion.

implied covenant of good faith and fair dealing (Count VI);[2] and unfair and deceptive trade practices (Count VII).

Douter has moved to dismiss this case based on an alleged lack of personal jurisdiction.  That motion is denied, as Dinnerman has made a prima facie showing that this court has specific jurisdiction over Douter with respect to tort and contract claims alleged in the Complaint.

II.     LEGAL STANDARD FOR A MOTION TO DISMISS BASED ON AN ALLEGED LACK OF PERSONAL JURISDICTION.

A plaintiff has the burden of establishing personal jurisdiction over a nonresident defendant.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004); Ziegler v. Indian River County, 64 F.3d 470, 473 (9th Cir. 1995); Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1392 (9th Cir. 1984).  A plaintiff must establish personal jurisdiction over a defendant with respect to each claim.  Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004) ("Personal jurisdiction must exist for each claim asserted against a defendant." (citing Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1289 n.8 (9th Cir. 1977)).

_____

[2] It may be that Hawaii law does not recognize a claim for breach of good faith and fair dealing outside the insurance context.  See Francis, 89 Haw. at 238 n.2, 971 P.2d at 711 n.2 ("Although we do not address the question here, the reasoning of the cases cited supra and our own decision in Best Place suggests that, even if Francis attempted to state a claim for bad faith breach of his employment contract, it is not likely that he could do so.").  That issue is not before the court on this motion.

When, as here, a district court acts on a motion to dismiss without holding an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Schwarzenegger, 374 F.3d at 800; Ziegler, 64 F.3d at 473; Flynt, 734 F.2d at 1392. Although a plaintiff may not simply rest on the bare allegations of the complaint, uncontroverted allegations in the complaint must be taken as true, and conflicts between parties over statements contained in affidavits or declarations must be resolved in the plaintiff's favor. See Schwarzenegger, 374 F.3d at 800. If a plaintiff makes such a prima facie showing on a motion to dismiss, the plaintiff must eventually establish the jurisdictional facts by a preponderance of the evidence at either a preliminary hearing or a trial. Flynt, 734 F.2d at 1392.

If the defendant presents evidence to contradict the allegations in the complaint, the plaintiff must go beyond the pleadings and present affirmative proof of personal jurisdiction through affidavits and/or declarations. See AT&T Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996), as supplemented by 1996 WL 490789 (9th Cir. Aug. 28, 1996).

III.    ANALYSIS OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." Yahoo! Inc.

v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc).  This court considers two factors before exercising personal jurisdiction over a nonresident defendant in a diversity of citizenship case: "1) whether an applicable state rule or statute potentially confers jurisdiction over the defendant; and (2) whether assertion of such jurisdiction accords with constitutional principles of due process."  Flynt, 734 F.2d at 1392; Miracle v. N.Y.P. Holdings, Inc., 87 F. Supp. 2d 1060, 1064 (D. Haw. 2000).  The "jurisdictional inquiries under state law and federal due process merge into one analysis" when, as here, the state's long-arm statute is "co-extensive with federal due process requirements," as Hawaii's is.  See Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991); Cowen v. First Ins. Co. of Haw., 61 Haw. 644, 649, 608 P.2d 394, 399 (1980) (Hawaii's long-arm statute, Haw. Rev. Stat. § 634-35, was adopted to expand the jurisdiction of Hawaii's courts to the extent permitted by the due process clause of the Fourteenth Amendment); see also Yahoo!, 433 F.3d at 1205 ("Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same."); Schwarzenegger, 374 F.3d at 800-01 (same).  Accordingly, personal jurisdiction over Douter depends on federal due process requirements.

The Due Process Clause of the United States
Constitution protects a person's "liberty interest in not being
subject to the binding judgments of a forum with which he has
established no meaningful 'contacts, ties, or relations.'"
Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985)
(quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)).
The Due Process Clause requires that defendants have "certain
minimum contacts with [Hawaii] such that the maintenance of the
suit does not offend traditional notions of fair play and
substantial justice."  Int'l Shoe, 326 U.S. at 316; Data Disc,
557 F.2d at 1287.  To have the required minimum contacts, Douter
must have acted and had a connection with Hawaii in a manner that
should have led it to "reasonably anticipate being haled into
court" in Hawaii.  See Sher v. Johnson, 911 F.2d 1357, 1361 (9th
Cir. 1990) (quoting World-Wide Volkswagen Corp. v. Woodson, 444
U.S. 286, 297 (1980)).  Requiring "minimum contacts" performs two
functions.  "It protects the defendant against the burdens of
litigating in a distant or inconvenient forum.  And it acts to
ensure that the States[,] through their courts, do not reach out
beyond the limits imposed on them by their status as coequal
sovereigns in a federal system."  World-Wide Volkswagen, 444 U.S.
at 292.

In applying the requirements of the Due Process Clause, courts have created two jurisdictional concepts--general and specific jurisdiction.

A.    General Jurisdiction.

A court may exercise general jurisdiction over a defendant when the defendant is a resident or domiciliary of the forum state, or the defendant's contacts with the forum state are continuous, systematic, and substantial.  Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984); Schwarzenegger, 374 F.3d at 801 ("the defendant must engage in continuous and systematic general business contacts . . . that approximate physical presence in the forum state" (quotations and citations omitted)); Data Disc, 557 F.2d at 1287 ("If the nonresident defendant's activities within a state are 'substantial' or 'continuous and systematic,' there is a sufficient relationship between the defendant and the state to support jurisdiction even if the cause of action is unrelated to the defendant's forum activities.").  Dinnerman has not demonstrated general jurisdiction over Douter, as Dinnerman has not alleged or shown that Douter's contacts with Hawaii are continuous, systematic, and substantial.

At best, Dinnerman argues in a declaration that Douter owns 100% of a Hawaii-based subsidiary named Douter Coffee Co. Hawaii. Inc.  See Declaration of Joshua Dinnerman (May 18, 2007)

¶ 41.  Citing a website, Dinnerman says that Douter controls this subsidiary.  Id.  Having a wholly owned subsidiary in Hawaii, however, does not establish contacts with Hawaii that are continuous, systematic, and substantial.  See Doe v. Unocal Corp., 248 F.3d 915, 925 (9th Cir. 2001) ("The existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum.").  Dinnerman is asking this court to ignore the subsidiary's status as a separate corporate entity.  See id.

Nor does the statement on the website that "Douter directly manages all business operations" establish that Douter should be treated as the alter-ego of its subsidiary for purposes of this action.  Indeed, the website appears to have been created in 2007, and to discuss circumstances in 2007, not in the period of the conduct alleged in this case.  See Dinnerman's Ex. 37.

Douter does not own property or maintain bank accounts in Hawaii.  See Declaration of Ichio Sugama (Apr. 12, 2007) ¶ 9. Examining all of the circumstances in the record, this court concludes that Dinnerman has not established this court's general jurisdiction over Douter.

B.    <u>Specific Jurisdiction.</u>

Specific jurisdiction may be found when the cause of action arises out of a defendant's contact with or activities in the forum state.  <u>See</u> <u>Roth</u>, 942 F.2d at 620; <u>Data Disc</u>, 557 F.2d at 1287.  The exercise of specific jurisdiction is consistent with due process only under the following conditions:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

<u>Yahoo!</u>, 433 F.3d at 1205-06; <u>Schwarzenegger</u>, 374 F.3d at 802.  Dinnerman bears the burden of satisfying the first two prongs of this test.  If Dinnerman satisfies both of those prongs, the burden then shifts to Douter to "present a compelling case" that the exercise of jurisdiction would not be reasonable.  <u>Schwarzenegger</u>, 374 F.3d at 802 (quoting <u>Burger King Corp.</u>, 471 U.S. at 477).

1.    Purposeful Availment.

The purposeful availment requirement protects a defendant from being haled into a jurisdiction merely because of random, fortuitous, or attenuated contacts with the jurisdiction, or because of the unilateral activity of a third person.  Burger King, 471 U.S. at 475.  Jurisdiction is proper when "the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state."  Id. (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).

In examining the purposeful availment requirement, this court analyzes "whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff."  Roth, 942 F.2d at 621; see also Gray & Co. v. Firstenberg Mach., Co., 913 F.2d 758, 760 (9th Cir. 1990). However, the defendant need not have been physically present or have had physical contact with the forum state, so long as the defendant's efforts were "purposefully directed" toward a forum resident.  Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)).  In examining the purposeful availment requirement, the Ninth Circuit distinguishes between tort and contract actions.  See Roth, 942 F.2d at 621.

a.   <u>Tort Claims.</u>

In the tort context, the Ninth Circuit imposes three requirements for purposeful availment.  The defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  <u>Yahoo!</u>, 433 F.3d at 1206.  Although previous Ninth Circuit precedent sometimes required the "brunt" of the harm to have been suffered in the forum state, the Ninth Circuit, sitting <u>en banc</u>, said in January 2006, "[T]he 'brunt' of the harm need not be suffered in the forum state.  If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state."  <u>Yahoo!</u>, 433 F.3d at 1207.

Douter argues that this court should not find purposeful availment with respect to Dinnerman's tort claims.  Douter says that its conduct was not expressly aimed at Hawaii and that its conduct did not cause harm that Douter knew would have been likely in Hawaii.  The court is unconvinced.  Because Douter did not request an evidentiary hearing on its motion, Dinnerman need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.  <u>See</u> <u>Schwarzenegger</u>, 374 F.3d at 800; <u>Ziegler</u>, 64 F.3d at 473; <u>Flynt</u>, 734 F.2d at 1392.

The Complaint alleges that Dinnerman "was, at all times relevant herein, a resident of the City and County of Honolulu, State of Hawaii."[3]  Complaint ¶ 1.  It alleges that, from January to March 2005, Douter, through its agent, Yukata Toriba, told Dinnerman in several emails that Douter planned to open coffee shops and kiosks in Hawaii.  According to the Complaint, Dinnerman was told by Douter that, if he would help Douter locate suitable properties, Douter would share the profits from the coffee shops and kiosks.  Id. ¶ 5.  The Complaint alleges that Ichio Sugama, a Douter agent, met Dinnerman in Hawaii in March 2005, inspected properties that Dinnerman had located, told Dinnerman that Douter intended to invest five or six million dollars to establish Douter's first shop, and assured Dinnerman that Douter would share the profits from the coffee shops and kiosks if Douter continued to look for suitable locations.  Id. ¶ 6.  The Complaint further alleges that, instead of leasing properties located by Dinnerman, Douter, "using the fruits of [Dinnerman's] research, attempted to negotiate a lease for a coffee shop in Honolulu without Dinnerman's knowledge or participation.  Id. ¶¶ 8-9.

---

[3]Because the Complaint was originally filed in state court, citizenship is not alleged for purposes of diversity jurisdiction.  However, subject matter jurisdiction does not appear to be in issue, as Dinnerman apparently does not share Douter's Japanese citizenship.

At the hearing on the motion, Douter disagreed with the Complaint's characterization of the relationship between Dinnerman and Douter.  Douter argued at the hearing that it had presented evidence indicating that their relationship was merely "preparatory" or "exploratory" and that Douter was only examining what Dinnerman had been proposing.  Although Douter may have thought that its relationship with Dinnerman was in the beginning stages, there is no dispute that the parties executed an "MOU." This "MOU," or "memorandum of understanding," was signed by the parties on or about March 3, 2005.  Although far from a picture of clarity, this "MOU" sufficiently evidences, for purposes of personal jurisdiction, an intent to form a partnership or joint venture between Dinnerman and Douter at least with respect to beginning an expansion of Douter's coffee business into the Hawaii market.  <u>See</u> Ex. 11 to Dinnerman's Decl. ¶ 1 ("Parties agree to partner to pursue joint venture prospects for the international development and expansion of coffee business including retail stores.") ¶ 9 ("Both parties agree to initial focus on the Hawaii market but may elect to extend the scope to other markets as things develop.").  The court is therefore unpersuaded by Douter's argument at the hearing that the MOU did not include Douter's targeting of the Hawaii market.

Dinnerman's fraud and misrepresentation claims (Counts I and II) certainly allege that Douter's conduct was

expressly aimed at Hawaii, causing harm that Douter knew was
likely to be suffered in Hawaii.  Douter argues that there was no
such express aiming because Dinnerman is an international
businessman.  However, it can fairly be inferred from the MOU
that Douter knew Dinnerman was working in Hawaii, as Douter was
allegedly asking Dinnerman to locate suitable locations in Hawaii
for Douter's coffee shops and kiosks.  Any interest Dinnerman may
have had in expanding Douter's coffee business to an
international level does not diminish the MOU's initial focus on
the Hawaii market.

Although the Complaint's allegations concerning the
exact tortious conduct are vague, it appears that Dinnerman is
claiming that Douter had no intention of sharing profits with
Dinnerman and that, instead, Douter had Dinnerman research
locations for coffee shops and kiosks in Hawaii, all the while
intending to use that research to open its coffee shops and
kiosks without paying Dinnerman.[4]  These allegations satisfy the
purposeful availment prong with respect to the tort claims.  See
Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082,
1087 (9th Cir. 2000) ("Express aiming is a concept that in the
jurisdictional context hardly defines itself.  From the available
cases, we deduce that the requirement is satisfied when the

_____

[4]Whether these allegations satisfy Rule 9(b) of the Federal
Rules of Civil Procedure is not currently before this court.

13

defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."), <u>overruled on other grounds by</u> <u>Yahoo!</u>, 433 F.3d at 1207.

b.   <u>Contract Claims.</u>

The court turns now from the tort to the contract claims.  A contract with an effect in the forum state does not, by itself, automatically establish the minimum contacts necessary for the exercise of personal jurisdiction over a nonresident defendant.  <u>Burger King</u>, 471 U.S. at 478.  Instead, a court must examine the circumstances surrounding the contract in determining whether there have been the required minimum contacts. Accordingly, this court examines "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."  <u>See</u> <u>id.</u> at 479.  "Parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."  <u>Id.</u> at 473 (quoting <u>Travelers Heath Ass'n. v. Virginia</u>, 339 U.S. 643, 647 (1950)). "Thus, if the defendant directly solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the

forum state's laws." <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 840 (9th Cir. 1986).

The Complaint alleges that Douter contracted with Dinnerman to have Dinnerman locate suitable locations for coffee shops and kiosks in Hawaii.  In return, Dinnerman was allegedly supposed to receive a share of the profits.  The Complaint alleges that Dinnerman located appropriate properties in Hawaii and that Douter inspected those properties.  <u>See</u> Complaint ¶¶ 5-6.  The MOU contemplated that the initial focus of the partnership or joint venture between Dinnerman and Douter would be the expansion of Douter's coffee business into the Hawaii market.  To that end, Ichio Sugama of Douter's Business Development Department traveled to Honolulu, Hawaii, in March 2005, to meet with Dinnerman and visit possible retail sites for the coffee shops and kiosks.  <u>See</u> Declaration of Ichio Sugama (Apr. 12, 2007) ¶ 4.  It also appears that Douter's president viewed Dinnerman's proposed retail sites.  <u>Id.</u> ¶ 8.  This conduct satisfies the purposeful availment prong with respect to Dinnerman's contract-based claims, as the parties allegedly contracted for work to be done in Hawaii.

The court is unpersuaded by Douter's argument at the hearing that Dinnerman had been proposing an expansion of Douter coffee only on an international level, rather than an expansion into the Hawaii market.  Under the MOU, the parties hoped to

15

pursue an international coffee business, but the initial focus of the partnership or joint venture was to be the Hawaii market.

### 2.   Arising out of Forum-Related Activities.

The second requirement for specific jurisdiction is that Dinnerman's claims arise out of Douter's forum-related activities.  See Panavision, 141 F.3d at 1322.  The court must determine whether Dinnerman would not have been injured "but for" Douter's alleged conduct directed toward him in Hawaii.  See id. This requirement is satisfied.  "But for" Douter's alleged representations and contract asking Dinnerman to locate properties suitable for coffee shops and kiosks in Hawaii, Dinnerman would not have suffered the alleged injuries.

### 3.   Reasonableness of Exercise of Jurisdiction.

Even if a plaintiff satisfies the first two requirements for personal jurisdiction over a defendant, jurisdiction may not be exercised unless that exercise would be reasonable.  Id.; see also Ziegler, 64 F.3d at 474-75 ("even if the first two prongs are satisfied, an unreasonable exercise of jurisdiction violates the Due Process Clause").  In determining reasonableness, the court considers: (1) the extent of purposeful interjection into the forum state; (2) the burden on the defendant; (3) the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in the suit; (5) the most efficient judicial resolution of the dispute;

(6) the convenience and effectiveness of relief for the plaintiff; and (7) the existence of an alternative forum.  Burger King, 471 U.S. at 475; Ziegler, 64 F.3d at 475.  None of these seven factors is dispositive.  Instead, all seven factors must be balanced.  Ziegler, 64 F.3d at 475.

                    a.   Purposeful Interjection.

          The first factor the court examines is the extent of Douter's purposeful interjection into Hawaii.  "Even if there is sufficient 'interjection' into the state to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong."  Panavision, 141 F.3d at 1323 (quoting Core-Vent, 11 F.3d at 1488); but see Roth, 942 F.2d at 623 ("In light of the first prong of purposeful availment, analysis of this first factor in the third prong would be redundant.").

          Douter allegedly entered into a contract and/or committed torts that caused Dinnerman to seek out locations for Douter coffee shops and kiosks in Hawaii.  Even if the degree of intrusion into Hawaii was not great, this court has enough before it to conclude that this factor weighs in Dinnermans' favor.

                    b.   Douter's Burden in Litigating.

          In examining the second factor (the litigation burden), the court's primary concern is the defendant's burden.  See

                              17

F.D.I.C. v. British-Am. Ins. Co., 828 F.2d 1439, 1444 (9th Cir. 1987). Douter will be burdened with defending this action thousands of miles from Japan, its place of incorporation. However, "unless the inconvenience [to Douter of litigating in Hawaii] is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." See Panavision, 141 F.3d at 1333 (internal quotation omitted). The presence in Hawaii of Douter's subsidiary may mitigate the burden on Douter by at least providing Douter with clerical and administrative assistance here in Hawaii. The inconvenience of litigating in Hawaii clearly does not amount to a deprivation of due process. See Miracle, 87 F. Supp. 2d at 1069 (finding that requiring New York defendants and their potential witnesses to travel to Hawaii was not a deprivation of due process). In this "era of fax machines and discount air travel, requiring [Douter] to litigate in [Hawaii] is not constitutionally unreasonable." Panavision, 141 F.3d at 1323. At best, this factor weighs only slightly in favor of finding litigation in Hawaii unreasonable.

c.   Conflict With Sovereignty of Japan.

The court also considers the extent to which its exercise of jurisdiction in Hawaii would conflict with the sovereignty of Japan, Douter's home. There has been no demonstration of any actual conflict with the sovereignty of

18

Japan.  See Pac. Fisheries, 2000 WL 1670917, at *10 (D. Haw. Oct.

17, 2000); United Kingdom Mut. S.S. Assurance Ass'n v. Cont'l

Maritime of San Francisco, Inc., 1992 W.L. 486937, at *5 (N.D.

Cal. Aug. 31, 1992) (stating that, because there was no conflict

between Canadian law and U.S. law in that case, this factor

weighed in favor of the exercise of specific jurisdiction).  At

best, Douter notes that, "[i]n determining how much weight to

give this factor, [the Ninth Circuit has] focused on the presence

or absence of connections to the United States in general, not

just to the forum state.  Sovereignty concerns weigh more heavily

when the defendants have no United States-based relationships."

Core-Vent Corp. v. Nobel Indus., 11 F.3d 1482, 1489 (9th Cir.

1993).  If this is a factor in Douter's favor, it is only

slightly so.

### d.   Forum State's Interest.

The fourth factor--Hawaii's interest in this dispute--

weighs in favor of exercising jurisdiction over Dinnerman.

Hawaii has a "strong interest in providing an effective means of

redress for its residents who are tortiously injured."  Miracle,

87 F. Supp. 2d at 1070.  Dinnerman alleges that, at all relevant

times, he was a resident of the State of Hawaii.[5]  See Complaint

---

[5]Dinnerman's status as an "international businessman" and
his signing of a declaration in Las Vegas, Nevada, do not
establish that Dinnerman resides outside the State of Hawaii,
depriving Hawaii of a strong interest in protecting him.

¶ 1.  Hawaii therefore has a "strong interest in providing an effective means of redress" for the tort that Dinnerman claims harmed it in Hawaii.

e.   Efficient Resolution.

The fifth factor--efficient judicial resolution of the controversy--focuses on the location of the evidence and witnesses.  Panavision, 141 F.3d at 1323-24.  This factor "is no longer weighed heavily given the modern advances in communication and transportation."  Id.  With witnesses and evidence located in both Hawaii and Japan, this factor is neutral.

f.   Convenient and Effective Relief for Plaintiff.

Hawaii is a convenient forum that can provide effective relief to Dinnerman, as he claims to have been a resident of Hawaii.  Most of Dinnerman's witnesses and evidence appear to be located in Hawaii.  This factor weighs in favor of the exercise of jurisdiction.

g.    Alternative Forum.

Dinnerman bears the burden of proving the
unavailability of an alternative forum.  See Core-Vent, 11 F.3d
at 1490.  Dinnerman has not demonstrated the unavailability of
such an alternative forum.  Mugi Sekido, a Japanese attorney,
indicates that "[a]ll of Mr. Dinnerman's claims can be litigated
in Japan before the Japanese civil courts."  Declaration of Mugi
Sekido (Apr. 12, 2007) ¶ 8.  Accordingly, this factor weighs in
favor of Douter.

h.    Balancing and Applying the Factors.

Overall, the balance of the seven factors weighs in
favor of exercising jurisdiction over Douter.  The seventh factor
weighs in favor of unreasonableness, and the second and third
factors weigh, at best, only slightly in favor of
unreasonableness.  The first, fourth, and sixth factors favor
Dinnerman.  The fifth factor is neutral.

Douter has the burden of presenting "a compelling case
that the presence of some other considerations would render
jurisdiction unreasonable."  Burger King, 471 U.S. at 477.
Douter has not made a compelling showing.

IV.    CONCLUSION.

Because Dinnerman has met his burden on this motion of
making a prima facie showing of specific jurisdiction over Douter
with respect to the tort and contract claims alleged in the

21

Complaint, the court denies Douter's motion to dismiss for lack of personal jurisdiction.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 8, 2007.

_____
Susan Oki Mollway
United States District Judge

Dinnerman v. Douter Coffee Co., Civ. No. 07-00164 SOM/LEK; ORDER DENYING DEFENDANT'S MOTION TO DISMISS BASED ON PERSONAL JURISDICTION PRINCIPLES